UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICTOR ALFONSO PEREZ,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>*Defendants.* | **COMPLAINT**<br><br>Case No. |

Plaintiff, Victor Alfonso Perez, by and through his undersigned attorneys, for his Complaint alleges:

## PRELIMINARY STATEMENT

1. Mr. Perez seeks damages from the United States under the Federal Tort Claims Act (FTCA) based on his false and negligent imprisonment by U.S. customs officials for nearly three months. Mr. Perez and his family are Salvadoran citizens of modest means seeking asylum in the United States based on a credible fear of persecution in their home country. U.S. Customs and Border Protection (CBP) officials initially permitted them to live freely in the United States pending the asylum process. But when they appeared for a meeting at an Immigration and Customs Enforcement (ICE) office in Manhattan in May 2021, ICE officials separated Mr. Perez from his wife and two young daughters, and arrested him based on an erroneous and unsupported determination that he was a Mexican national with a different last name, Victor Perez-Balbuena, who had been deported eleven years earlier.

2. In clear violation of non-discretionary ICE regulations, the ICE officials failed to compare Mr. Perez's fingerprints to those of Mr. Perez-Balbuena before reinstating Mr. Perez-Balbuena's 2010 deportation order. They did so even after Mr. Perez protested adamantly and

presented a recently issued Salvadoran passport, which confirmed his identity and demonstrated that he was not from Mexico. While Mr. Perez was incarcerated under harsh conditions, his private counsel submitted to the U.S. Immigration Court additional documentary evidence further substantiating the obvious misidentification. This evidence, too, was ignored.

3. It was not until 84 days after his arrest that immigration officials, prodded by Mr. Perez's new counsel at Brooklyn Defenders Services, finally compared Mr. Perez's fingerprints with Mr. Perez-Balbuena's. They immediately saw that they had imprisoned the wrong man and released him the same day. Mr. Perez now seeks compensatory damages for his needless and inexcusable loss of liberty and the emotional distress experienced by him and his family caused by the wrongful and negligent conduct of U.S. immigration officials.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this FTCA case pursuant to 28 U.S.C. §§ 1331 and 1346(b)(1).

5. Venue in this Court is appropriate under 28 U.S.C. §§ 1391(b) and 1402(b), as the acts or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

6. Plaintiff is a Salvadoran fisherman seeking asylum in the United States with his wife and two young daughters, who were two and nine years old while he was wrongfully imprisoned. The family currently resides in New York City.

7. Defendant, the United States, is liable under the FTCA for damages arising from the wrongful and negligent acts and omissions of the ICE, CBP, and Department of Homeland Security (DHS) employees who caused Mr. Perez to be erroneously imprisoned for twelve weeks based on an obvious and easily prevented misidentification.

# FACTS

8.     On or around March 26, 2021, Mr. Perez presented himself to CBP officials near the Mexico-United States border with his family. He expressed his intention to seek asylum in the United States for himself and his family, citing a well-founded fear of returning to El Salvador, where Mr. Perez's brother had recently been decapitated. This was Mr. Perez's first time entering the United States.

9.     While detained near the border, CBP concluded—without any evidence—that Mr. Perez was Victor Perez-Balbuena, a Mexican national who had been deported from the United States in 2010. Mr. Perez immediately denied that he had ever been in the United States before or that he was a national of Mexico. He also showed CBP officials his valid Salvadoran national identity card, which showed his correct name and nationality.

10.    The CBP officials fingerprinted Mr. Perez but did not bother comparing them with those on file for Mr. Perez-Balbuena. Had they done so, they would have immediately known that Mr. Perez was not Mr. Perez-Balbuena. Nor did the CBP officials make any other attempt to determine Mr. Perez's identity accurately. The CBP's report misidentified Mr. Perez as Mr. Perez-Balbuena.

11.    Nonetheless, the Perez family was paroled into the United States to live freely and told to report to the ICE Enforcement and Removal Operations (ERO) office at 26 Federal Plaza in Manhattan on May 7, 2021.

12.    In the meantime, on April 23, 2021, Mr. Perez acquired a valid Salvadoran passport from the Consulate of El Salvador in New York City.

13.    As instructed, the Perez family presented themselves to the ICE ERO office on May 7, 2021. ICE officials continued to contend that Mr. Perez was Mr. Perez-Balbuena. Once

again, Mr. Perez insisted that he was a different person, and this time furnished his valid Salvadoran passport as proof of his identity. Like the CBP officials before them, the ICE officials blatantly ignored this dispositive evidence placed before them, and did not conduct a fingerprint comparison or do anything else to ascertain his correct identity.

14. Instead, the ICE officials instructed Mr. Perez's wife and children to leave the office under the false assurance that Mr. Perez would soon be released. Once his family was out of the building, they detained Mr. Perez and sent him 70 miles away to the Orange County Jail in Goshen, New York. The ICE officials did not notify Mr. Perez's family of his arrest and incarceration. Based on what they had been told by the ICE officials, his wife and daughters waited for him outside 26 Federal Plaza for more than an hour.

15. In order to hold Mr. Perez for removal based on the theory that he had previously been deported, ICE officials reinstated the 2010 final order of removal of Mr. Perez-Balbuena on May 7, 2021. Reinstating that removal order without a fingerprint comparison violated ICE's own regulations, which state that "the immigration officer **shall** determine…whether the alien is in fact an alien who was previously removed." 8 C.F.R. § 241.8(a) (emphasis added). In "disputed cases," such as Mr. Perez's, the ICE regulation specifically mandates that "verification of identity **shall be accomplished by a comparison of fingerprints** between those of the previously . . . removed alien . . . and those of the subject alien." *Id.* § 241.8(a)(2) (emphasis added). A fingerprint comparison is a non-discretionary requirement.

16. Following Mr. Perez's detention, his family retained private counsel, who filed a bond motion seeking Mr. Perez's release with the Varick Street Immigration Court. DHS opposed the motion, reiterating the baseless assertion that Mr. Perez was Mr. Perez-Balbuena.

The Immigration Court Judge denied Mr. Perez's motion for lack of jurisdiction on or about May 21, 2021.

17. At some point between May and June 2021, DHS provided Mr. Perez's counsel with various documents relating to Mr. Perez-Balbuena's removal order. These documents showed that Mr. Perez-Balbuena had been detained at the York County Prison in Pennsylvania and had been removed to Mexico on or about June 4, 2010.

18. On or around June 21, 2021, Mr. Perez's counsel submitted a second motion to the Varick Street Immigration Court requesting a bond determination. This time, Mr. Perez also submitted to both the Court and DHS a 2010 land-sale contract and contemporaneous photographs showing that he was physically present in El Salvador in 2010, during Mr. Perez-Balbuena's removal proceedings. Yet again, DHS officials did not conduct any further investigation of Mr. Perez's identity despite receiving even more clear documentary evidence demonstrating that they had imprisoned the wrong person. The Immigration Court took no action on Mr. Perez's motion.

19. In July 2021, Mr. Perez contacted Brooklyn Defender Services (BDS) for further assistance. BDS contacted two members of ICE's legal department and several supervisory ERO officials to inquire why Mr. Perez was being detained as Mr. Perez-Balbuena despite the clear evidence that ICE officials had misidentified him.

20. At long last, on July 30, 2021, immigration officials conducted the fingerprint comparison that should have been done three months before. The comparison "determined that [Mr. Perez] was not a match to PEREZ-BALBUENA, Victor – A# 094 250 447…." Mr. Perez was released the same day.

21. Mr. Perez's wrongful imprisonment had a traumatic effect on him and his family. Mr. Perez was erroneously deprived of his personal liberty for a total of 84 days. For fourteen of those days, he was confined to an isolation cell for over 23 hours a day, leaving only to shower. While detained, he was not able to see his wife or daughters, and was in constant fear of being summarily deported to El Salvador—where his brother had recently been decapitated—or to Mexico, a country to which he has no ties. He was also needlessly subjected to a heightened risk of contracting COVID-19 in prison.

22. Conditions in ICE detention facilities are notoriously deficient. The Office of the Inspector General ("OIG") of the Department of Homeland Security ("DHS") concluded in a 2019 report that ICE "does not adequately hold detention facility contractors accountable for not meeting performance standards," "issued waivers to facilities with deficient conditions, seeking to exempt them from complying with certain standards," and "does not adequately share information about ICE detention contracts with key officials." ICE also routinely fails to remedy inhumane conditions. According to the OIG, "ICE does not adequately follow up on identified deficiencies or consistently hold facilities accountable for correcting them, which further diminishes the usefulness of inspections." DHS OIG, "ICE Does Not Fully Use Contracting Tools to Hold Detention Facility Contractors Accountable for Failing to Meet Performance Standards," at 1 (Jan. 29, 2019).

23. In addition, Mr. Perez's young daughters (ages two and nine) were abruptly deprived of their father's care for three months. They broke down in tears in the lobby of 26 Federal Plaza on May 7, 2021, when he did not appear after ICE ERO personnel had told his family that he would be coming down shortly. His older daughter began to have behavioral issues in school and was assigned a counselor, and his wife lost a vital source of support and consortium.

The whole family was terrified that Mr. Perez could be deported to El Salvador or Mexico at any moment.

24. Mr. Perez has exhausted his available administrative remedies. On January 8, 2022, he filed administrative claims with DHS, CBP, and ICE for damages resulting from his wrongful detention. ICE denied Mr. Perez's claims by letter dated November 9, 2022, which further advised him that if he was dissatisfied with ICE's determination he may file suit in an appropriate United States District Court.

## FIRST CLAIM

### (FTCA - False Imprisonment)

25. The allegations in paragraphs 1-24 above are incorporated by reference.

26. Under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-2680, Defendant United States is liable for money damages for injury caused by the negligent or wrongful act or omission of any government employee, including employees of DHS, CBP, and ICE, while acting within the scope of the employee's office or employment under circumstances where the United States, if a private person, would be liable to Plaintiff in accordance with the laws of New York, where the acts or omissions occurred.

27. The FTCA encompasses claims based the wrongful conduct of government employees that constitute false imprisonment under New York law. False imprisonment under New York law requires that the defendant intended to confine the plaintiff, the plaintiff was conscious of the confinement, the plaintiff did not consent to the confinement, and the confinement was not otherwise privileged.

28. Employees of DHS, ICE, and CBP, acting within the scope of their employment, intended to confine Mr. Perez. Without taking the obvious and mandatory step of comparing Mr.

Perez's fingerprints with those of Mr. Perez-Balbuena, and ignoring clear documentary evidence of his correct identity, they wrongfully confined him based on an erroneous determination that he was a previously removed person with a different name from a different country. ICE officials also deployed a cruel ruse to get Mr. Perez's family to leave their offices before they detained him.

29. Mr. Perez was painfully conscious of his 84-day imprisonment, including fourteen days in solitary confinement, and the confinement, which was in violation of ICE mandatory identification requirements, was not otherwise privileged.

## SECOND CLAIM

### (FTCA – Negligence)

30. The allegations in paragraphs 1-29 above are incorporated by reference.

31. The FTCA also encompasses claims based the conduct of government employees, acting within the scope of their employment, that constitute negligence under New York law. Negligence under New York law requires the existence of a legal duty, a breach of that duty, proximate causation, and damages.

32. Employees of DHS, ICE, and CBP had a legal duty under 8 C.F.R. § 241.8(a) to use reasonable care to determine Mr. Perez's identify, including by conducting a fingerprint comparison, prior to reinstating a removal order for the purpose of removing him from the country.

33. DHS, ICE, and CBP employees, acting within the scope of their employment, breached their legal duty by reinstating a removal order for the purpose of removing Mr. Perez without conducting a mandatory fingerprint comparison or reviewing clear documentary evidence of his correct identity in their own files and provided to them by Mr. Perez and his counsel.

34. As a direct and proximate result of these federal employees' actions, Mr. Perez and his family suffered substantial harm, including but not limited to loss of liberty, loss of consortium, loss of income, and emotional distress arising from his wrongful incarceration and constant fear of sudden and wrongful deportation.

## THIRD CLAIM

### (FTCA - Intentional Infliction of Emotional Distress)

35. The allegations of paragraphs 1-34 above are incorporated by reference.

36. The FTCA also encompasses claims based the conduct of government employees, acting within the scope of their employment, that constitute intentional infliction of emotional distress under New York law. Under New York law, this tort requires extreme and outrageous conduct; an intent to cause—or disregard of a substantial probability of causing—severe emotional distress; a causal connection between the conduct and the injury; and the resultant severe emotional distress.

37. DHS, ICE, CBP, and DOC employees, acting within the scope of their employment, engaged in extreme and outrageous conduct in this case. They incarcerated Mr. Perez, a husband and father of two young daughters, for three months based on an obvious and easily preventable misidentification in clear violation of mandatory ICE regulations concerning the reinstatement of removal orders.

38. These employees acted in reckless disregard of the probability that Mr. Perez would suffer severe emotional distress from being falsely imprisoned, including two weeks in isolation, and separated from his family, all under constant fear of precipitous and wrongful deportation to a country where he feared persecution or a different country with which he had no connection. ICE officials also intentionally caused Mr. Perez and his family emotional distress by sending him to a

prison 70 miles away while falsely assuring his wife and daughters that he would be reunited with them shortly.

39. The extreme and outrageous conduct of these federal employees caused Mr. Perez and his family to suffer severe emotional distress, including but not limited to the emotional distress arising from his wrongful detention and separation for twelve weeks, including two weeks in solitary confinement, and his and his family's non-stop dread that he would be deported at any time to El Salvador—where his brother was recently decapitated—or to Mexico—a country to which he has no ties.

WHEREFORE, Plaintiff respectfully requests an award of:

A. compensatory damages;

B. reasonable attorneys' fees and costs; and

C. such other relief as the Court deems just and proper.

Dated: New York, New York
January 30, 2023

Respectfully submitted,

DENTONS US LLP

  /s/  David L. Kornblau
David L. Kornblau, Esq.
Charles M. Farrell, Esq.
Cody Anthony, Esq. (*admission pending*)
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6890 (Kornblau)
*david.kornblau@dentons.com*
*charles.farrell@dentons.com*
*cody.anthony@dentons.com*

BROOKLYN DEFENDER SERVICES
Alexandra Lampert, Esq.
156 Pierrepont Street
Brooklyn, NY 11201
(646) 856-8378
*alampert@bds.org*